**456**

In re Lillian Ann HULL aka Lillian A. Hull, Debtor.

James R. WARREN, Trustee in Bankruptcy, Plaintiff,

v.

Robert H. HAYES, Defendant.

Bankruptcy No. 3–81–03414.
Adv. No. 3–82–0113.

United States Bankruptcy Court, S.D. Ohio, W.D.

May 25, 1983.

Judgment June 8, 1983.

James R. Warren, Springfield, Ohio, trustee.

James E. Heath, Springfield, Ohio, for debtor.

Dennis E. Stegner, Springfield, Ohio, for defendant.

## FINDINGS, CONCLUSIONS AND PROPOSED JUDGMENT

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This matter is before the Court upon Complaint filed by the Chapter 7 Trustee on 26 December 1981. The Court held pretrial conferences to consider the matter on 30 April 1982 and on 25 June 1982. The Court heard the matter on 20 August 1982. The following findings and conclusions are based upon the record, the evidence adduced at the hearing, and the parties' joint pretrial order which includes the pertinent documents as exhibits attached thereto without any objection to their authenticity or admissability. The Court also takes judicial notice of Debtor's case file, numbered 3–81–03414.

### FINDINGS, CONCLUSIONS AND PROPOSED JUDGMENT

The instant Complaint essentially requests money judgment against Defendant based upon a "Note" dated 8 October 1981 whereby Defendant agreed to pay Debtor $12,000.00 plus 12% annual interest in monthly payments of $172.17 commencing 8 November 1981. Defendant paid only two payments, and the parties have agreed that the present balance of the principal owing is $11,895.14.

The underlying obligation was based upon the sale of Debtor's business, known as "Newt Oliver's Froshop Drive-In," to Defendant. The sale was consummated by joint indorsement of a written "Contract" dated 24 August 1981. The Contract provides, in pertinent part, as follows:

1. Purchaser agrees to pay for said premises the sum of Sixteen Thousand

dollars and 00/100 Dollars ($16,000.00) Cash on delivery of deed, payable on the following terms: $4,000.00 Down payment, balance on purchase price subject to security agreement for the balance of $12,000.00. Terms: 12% Interest, at 172.-17 per month including principal and interest. Payments based on 10 years, monthly declining balance. Entire principal balance due on 5h anniversary. * * see Paragraph "8".

2. The property passing under this contract shall include the following now on the premises. IN THEIR PRESENT CONDITION: all fixtures and equipment—paper-food and drink inventory.

. . . . .

8. OTHER CONDITIONS: Down payment $2,000.00 due upon closing within 10 days of acceptance, balance of $2,000.00 in 30 days from acceptance of this offer. This offer subject to obtaining a satisfactory lease from Real Estate owner. In the event of business failure seller will take back business and chattels for balance owed by purchasers. Purchaser may immediately (upon acceptance of this offer) enter premises to paint and repair inside and out.

. . . . .

12. If Purchaser defaults in completing this contract, the deposit shall be paid to the Seller without limitation on any additional claim of Seller against Purchaser.

The record is indefinite regarding Defendant's handling of the business. Although the business is a seasonal business, at its peak during the summer months, Defendant began operating the business "about" September of 1981. (The Court notes that the date of Debtor's Petition filing was 2 December 1981.) Defendant operated for about two or three months, but then ceased operations "for the holidays" and never reopened. Defendant testified that he lost money every week he was in business (largely because of the wage expense for two employees). He also testified that he invested about $1,000.00 in repairs, and that, including his initial $4,000.00 downpayment, he lost about $6,000.00 during the brief period he operated the business.

The basic issue before the Court is whether ¶ 8 of the Contract dated 24 August 1981 is operative to excuse Defendant from payment on the Note dated 8 October 1981. The Court notes that the Trustee has not alleged that the Debtor either fraudulently conveyed the business or entered into an illusory contract, or that either party acted in bad faith. The Court also notes that the parties apparently do not dispute that the business has, in fact, "failed" as that term was contemplated within ¶ 8 of the Contract.

It is the determination of the Court that Defendant may assert ¶ 8 of the Contract as a defense to any obligation owing by Defendant on the Note. The Court further finds that the above determination is this Court's conclusion regardless whether the Note is deemed a negotiable instrument or "merely" a consensual contract.

The instant Note appears to fulfill the requirements of Article 3 of the Uniform Commercial Code for instruments to be negotiable and thus within the scope of Article 3. See O.R.C. § 1303.03(A) and (B)(4) [U.C.C. 3–104]. It is not necessary, however, for the Court to determine the negotiability of the Note because the Trustee does not allege (nor appear to possess) the rights of a holder in due course, and therefore "takes the instrument subject to all defenses of any party which would be available in an action on a simple contract." O.R.C. § 1303.35(B) [U.C.C. 3–306]. Note also O.R.C. §§ 1303.31(C)(2) [U.C.C. 3–302] and .36(C) [3–307].

Regardless whether the instant Note is deemed negotiable, the ultimate question before the Court, therefore, is whether the underlying contract provides Defendant with an excuse from performance. It is the opinion of the Court that the Contract and Note may be tacked for purposes of determining the terms of the underlying contract as intended by the parties. As stated in 180. Jur.3d Contracts § 151:

Although they do not expressly refer to each other, several writings, though executed at different times, may be construed together for the purpose of ascertaining the terms of a contract. Thus, different papers containing parts of a contract will be construed together. A contract should be construed in the light of a previous contract which is evidently designed to control the relations of the parties for a period covered by the latter contract, unless the latter contract is manifestly an abrogation of the former. [annotations omitted]

In this regard, it is the finding of the Court that the Note is apparently consonant with the terms of the Contract.

Based upon a reading of the Note and Contract construed together, it is the determination of the Court that it was the intention of the parties that Defendant's obligations cease in the event of business failure.

As aforementioned, it is the further determination of the Court that Defendant's defense of no liability based upon an allegation of business failure may be asserted against any party, including the Trustee, who does not hold the Note in due course. It is the further determination of the Court that the record does not substantiate the applicability of ¶ 12 of the Contract nor any damages assertable thereunder.

As elaborated in this Court's opinion of *Matter of Clark,* Case No. 3–82–00546, Adv. Proc. 3–82–0571 (May 4, 1983), IT IS HEREBY PROPOSED, in accordance with Model Rule (d)(3)(B) and *White Motor Corp. v. Citibank,* 704 F.2d 254 (1983), that the district court enter a Judgment providing that instant Complaint be DENIED.

## JUDGMENT

CHARLES A. ANDERSON, Bankruptcy Judge.

IT IS ORDERED AND ADJUDGED That the plaintiff take nothing, that the action be dismissed on the merits, and that the defendant, Robert H. Hayes, recover of the plaintiff James R. Warren, Trustee in Bankruptcy, his costs of action.